RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0022p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

     *v.*

ATREL E. HOWARD, JR.,

        *Defendant-Appellant*.

No. 18-4213

———————

Appeal from the United States District Court
or the Northern District of Ohio at Cleveland.
No. 1:17-cr-00519-1—Solomon Oliver, Jr., District Judge.

Decided and Filed:  January 21, 2020

Before:  KETHLEDGE, BUSH, NALBANDIAN, Circuit Judges.

———————

## COUNSEL

**ON BRIEF:**  Donald Butler, Cleveland, Ohio, for Appellant.  Daniel R. Ranke, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

BUSH, J., delivered the opinion of the court in which KETHLEDGE, J., joined, and NALBANDIAN, J., joined in part and in the judgment.  NALBANDIAN, J. (pp. 17–25), delivered a separate concurring opinion.

———————

## OPINION

———————

JOHN K. BUSH, Circuit Judge.  In our digitized age,  enigmatic shorthand flourishes with new forms of written communication—from texts, to Instant Messaging, to Tweets, to Snapchats, to Instagram stories—in which the deciphering of acronyms, initialisms, and emojis

can be difficult. But, we still have "old school" forms of communication, like phone calls and voicemails—in which one's voice is used and words are not so easily lost in abbreviation or pictorialization. Usually unambiguous speech is fortunate, but sometimes, it can be quite disturbing. The latter is the case here, where the intent and purpose of a voicemail message came across as chillingly clear.

Atrel Howard Jr. appeals his conviction of transmitting a threat in interstate commerce to murder former U.S. Attorney General Eric Holder in violation of 18 U.S.C. § 875(c).[1] The issues before us are (1) whether the government violated Howard's Fifth and Sixth Amendment rights and deprived the district court of jurisdiction by omitting the essential *mens rea* element as required by *Elonis v. United States*, 135 S. Ct. 2001 (2015); (2) whether the district court erred in instructing the jury as to what type of communication would constitute a "true threat" under § 875(c); and (3) whether the government presented sufficient evidence to support Howard's conviction. For the reasons explained below, none of these arguments have merit. We therefore **AFFIRM** the judgment of conviction.

**I.**

On Sunday, November 12, 2017, a man identifying himself as Atrel Howard left the following voicemail for Eric Holder at the former attorney general's law firm, Covington & Burling, LLP (Covington), where Holder is now a partner in Washington, D.C.:

> Former U.S. Attorney General Eric Holder, I'm going to kill you. My name is – former U.S. Attorney General Eric Holder, I am going to murder you. My name is Atrel Howard. We had spoken in February of 2010. I was a United States unconstitutional convicted, uh, uh, prisoner by the Common Pleas Court of Cuyahoga County of the State of Ohio, by Judge John Sutula, through the second part of the clause of the double jeopardy law of the United States Constitution stating that a man cannot be put twice in jeopardy of loss of life — I mean a man cannot be put in jeopardy of loss of limb for the same — a man cannot be twice put in jeopardy for a loss of limb for the same charge.
>
> Uh, I started — we had spoken. My name is Atrel Howard of Cleveland, Ohio. If you get this message you need to realize that I'm under unconstitutional United

---

[1] 18 U.S.C. § 875(c) states the following: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."

States law as we speak. I was sentenced to 50 months in federal prison for a conviction of the federal offense of — beginning [*sic*] originally an intentional assault of a federal agent or employee on the FBI agency premises.

(R. 49: Trial Trans., Lamb, PageID 500–01).

On December 12, 2017, a single-count indictment charged Howard with the knowing and willful transmission in interstate commerce of a communication containing a threat to injure another, in violation of § 875(c). The jury trial commenced on July 26, 2019.

The government called Michael Lamb, Covington's Director of Security, to testify regarding the standard procedure through which telephone calls received after business hours at the firm are routed to the proper attorney. Based on this process, Lamb testified that it was likely that once Howard made a call to Covington's general telephone number, he was provided with instructions from an automated system regarding how to locate Holder's extension via buttons on Howard's phone. Once he was connected to Holder's extension, Lamb explained, Howard would then have been able to leave a voicemail message directly on the former attorney general's voicemail. Lamb further testified that, upon completion of every caller's message, Covington's central voicemail system creates an audio file in Outlook email. The system then saves the message to the server connected to the office where the attorney being called is located—for Holder, the Washington, D.C. office. Often, according to Lamb, Covington's central server also is able to identify the caller's name, number, and location. It did so in this case, identifying the caller of the November 12, 2017 voicemail as Atrel Howard, and the location where the call originated as a telephone with an area code assigned to Cleveland, Ohio.

United States Secret Service Special Agent Philip Hogan testified that during the criminal investigation, he definitively confirmed Howard's identity as the voicemail caller. Hogan made the identification based on his work in a previous, unrelated January 2017 investigation, during which he became familiar with Howard's voice. Additionally, upon review of telephone records and call logs obtained from the D.C. Metropolitan Police Department and AT&T, Hogan confirmed that the telephone number from which Howard placed the call belonged to Howard's father, who is a resident of Cleveland, Ohio. According to Hogan, on Sunday, November 12, 2017—when Howard left the voicemail at issue—five sequential calls were made around

3:30 pm from the Cleveland telephone number of Howard's father. The first four calls ranged from about 27 seconds to one minute and 29 seconds. After those calls, there was a fifth call, lasting in total about 3 minutes and 52 seconds, which Hogan testified matched the approximate amount of time it would have taken for Howard to pass through the automated system prompts and leave the one minute and 54 second voicemail message.

Karen Ford, Howard's federal probation officer, also gave testimony that confirmed Howard's voice on the voicemail. Ford testified that she had met with Howard, who was under her supervision, approximately one week prior to the November 12 call. At that meeting, Howard indicated that during the upcoming week, he would be staying at the City Mission, as well as with his father, in Cleveland.

Upon the government's resting of its case, Howard filed a motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, which the district court denied. Howard then testified on his own behalf. He denied leaving the voicemail message, and insisted that he would never have threatened a former attorney general in this manner. Howard also claimed that although he and Holder had never met, the former attorney general did in fact like Howard. Upon resting the defense's case, Howard renewed his motion for judgment of acquittal, which the district court again denied. *See* Fed. R. Crim. P. 29.

The district court next gave the jury instructions, which began with a full reading of the indictment language related to the § 875(c) offense. Neither party objected at trial to any of the instructions. In fact, they were jointly proposed by the parties.

The jury found Howard guilty under § 875(c), and he was sentenced to a 30-month sentence for his § 875(c) offense, and a 24-month concurrent sentence for his supervised release violation.

## II.

Howard challenges the § 875(c) conviction on three grounds: (1) the initial indictment omitted the essential *mens rea* element of an § 875(c) offense, based on the Supreme Court's ruling in *Elonis*, 135 S. Ct. 2001; (2) the district court plainly erred in its jury instructions when

directing jurors to evaluate Howard's issuing of a "true threat" to Holder based on a reasonable person standard; and (3) the government failed to present sufficient evidence to support Howard's conviction for issuing a "true threat" to Holder under § 875(c). We address each argument in turn below.

## A. The Indictment

Howard first challenges the indictment's sufficiency, arguing that the text failed to charge an offense, which deprived the lower court of jurisdiction. The indictment read as follows:

> On or about November 12, 2017, in the Northern District of Ohio, Eastern Division, and elsewhere, ATREL HOWARD, did knowingly and willfully transmit in interstate and foreign commerce a communication containing a threat to injure the person of another, to wit: ATREL HOWARD called E.H., a former United States government official known to the grand jury, and left a voicemail threatening to murder E.H., all in violation of Title 18, Section 875(c), United States Code.

(R. 8: Indictment, PageID 14).

Specifically, Howard argues that the indictment language reflected a "reasonable person standard" that violated *Elonis*, 135 S. Ct. at 2012, where the Supreme Court held that an § 875(c) violation requires proof that a "defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." According to Howard, the prosecution had to do more than simply allege that Howard "knowingly and willfully left the voicemail" at issue; the indictment also needed to state, Howard contends, that he "*intended* to threaten or *knew* the voicemail would be interpreted as threatening" by Holder.[2] (Appellant Howard Br. at 16).

Generally, if a proper objection was made below, this court applies a de novo standard to review the sufficiency of an indictment. *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007); *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant

---

[2]In making this argument, Howard draws parallels between his claim and that made by the defendant in *Elonis*, 135 S. Ct. at 2011. Namely, Howard suggests that, as in *Elonis*, the government here failed to allege a "conscious wrongdoing," as required to state a violation of § 875(c). (Appellant Howard Br. at 1).

of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). A defendant can challenge the sufficiency of an indictment—on grounds either that the district court lacks jurisdiction or the prosecutor failed to charge an offense—at any time during case proceedings. However, if the defendant fails to raise the challenge at the district court level, then on appeal, "the indictment must be construed liberally in favor of its sufficiency." *Gatewood*, 173 F.3d at 986; *see also United States v. Duval*, 742 F.3d 246, 255 (6th Cir. 2014); *United States v. Martin*, 526 F.3d 926, 934 (6th Cir. 2008) (holding that a defendant challenges the court's jurisdiction when he asserts that the "indictment failed to charge the elements of a federal offense").

Furthermore, if there was no indictment-sufficiency objection raised below, then "unless the indictment cannot within reason be construed to charge a crime," *Gatewood*, 173 F.3d at 986, a defendant must demonstrate prejudice to prevail, and this court reviews only for plain error. *See United States v. Soto*, 794 F.3d 635, 649–50 (6th Cir. 2015). Plain-error review requires that the appellant demonstrate that "(1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Given that Howard made no objection below to the sufficiency of the indictment, we will apply plain-error review, and we will construe the indictment "liberally in favor of its sufficiency." *Gatewood*, 173 F.3d at 986. Therefore, applying plain-error review, and liberally construing the indictment's language, we hold it is sufficient under *Elonis*, as we explain.

Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment is required to include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." In evaluating criminal indictments, this court has deemed an indictment sufficient if it "fully, directly, and expressly . . . set[s] forth all the elements necessary to constitute the offense intended to be punished." *United States v. Kuehne*, 547 F.3d 667, 696

(6th Cir. 2008) (quoting *United States v. Douglas,* 398 F.3d 407, 411 (6th Cir. 2005)). "In particular, the indictment must: (1) 'set out all of the elements of the charge[d] offense and must give notice to the defendant of the charges he faces[,]' and (2) 'be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts.'" *Id.* (quoting *Douglas*, 398 F.3d at 413).

The indictment against Howard for a violation of 18 U.S.C. § 875(c) satisfies these requirements. "Section 875(c) punishes the transmission in interstate commerce of 'any communication containing . . . any threat to injure the person of another.' To convict a person under this law, the government must prove that: (1) the defendant sent a message in interstate commerce; (2) a reasonable observer would view the message as a threat; and (3) the defendant intended the message as a threat." *United States v. Doggart*, 906 F.3d 506, 510 (6th Cir. 2018); *see Elonis*, 135 S. Ct. at 2011; *see also United States v. Jeffries*, 692 F.3d 473, 478 (6th Cir. 2012). The indictment tracks these elements and includes the name of the defendant ("Atrel Howard") and the specific date of Howard's offense ("November 12, 2017"). (R.8: Indictment, PageID 14); *see United States v. Anderson*, 605 F.3d 404, 411 (6th Cir. 2010); *Kuehne*, 547 F.3d at 696. The indictment also specifies the victim of the offense ("E.H."—Eric Holder), the means of interstate communication (a "voicemail"), and the location in which defendant committed the crime (the "Northern District of Ohio, Eastern Division"). (R.8: Indictment, PageID 14). These allegations were "sufficiently specific" so as to provide Howard "protection against double jeopardy." *See Kuehne*, 547 F.3d at 696 (finding the indictment sufficiently specific because language provided protection against double jeopardy as the counts specified particular dates on which the offenses occurred and the type of drugs that were involved in each transaction).

Nonetheless, Howard maintains that the indictment is defective because the language does not allege that Howard *intended* to threaten Holder with the voicemail, but rather, that Howard simply "left the voicemail knowingly and willfully." (Appellant Howard Br. at 22). This omission, Howard argues, violates the Supreme Court's direction in *Elonis,* when the Court claimed it was insufficient under § 875(c) to "[h]ave[] liability turn on whether a 'reasonable person' regards the communication as a threat—regardless of what the defendant thinks." (*Id.* at 23) (citing *Elonis*, 135 S. Ct. at 2011)).

Howard's reading of *Elonis* has not been adopted by courts applying plain-error review. As discussed *supra,* this court, along with our sister circuits, is willing to "liberally construe" the text when considering the question of whether an indictment's language is sufficient. *Kuehne*, 547 F.3d at 667; *see United States v. Gray*, 260 F.3d 1267, 1282–83 (11th Cir. 2001) ("[P]ractical, rather than technical, considerations govern the validity of an indictment" (internal quotations and citations omitted)). For example, in *Kuehne*, our court upheld an indictment in which three counts failed to name the specific drug trafficking crimes that represented the predicate offenses for a charge brought under 18 U.S.C. § 924(c)(1)—a "requisite element" of the charge itself. Omission of this element alone did not undermine the sufficiency of the indictment because when "liberally construed," the "indictment [could] be read to allege a crime." *Kuehne*, 547 F.3d at 696.

Given the functional interpretation favored by our court in *Kuehne*, an indictment, when read in its entirety, can allege a defendant's intent element by way of descriptions of defendant's actions—all of which can imply defendant's requisite mental state for every element of the crime. *See id.* This seems true in the case at hand, particularly because we are required to construe the indictment liberally, given Howard's failure to object in the district court.

In fact, the indictment in the instant case is even more complete than the one upheld in *Kuehne*, which was missing a "requisite element" of the defendant's crime. Here, the indictment contains all of the elements of an § 875(c) charge, with Howard's *mens rea* named explicitly as "knowingly and willfully." (R.8: Indictment, PageID 14). It is true, as Howard notes, that these states of mind are not placed directly in front of the word "threat." Nonetheless, a reasonable reading of the indictment's text in its entirety, accompanied by consideration of the additional factual details found in the remainder of the language, leads one to infer that the words modify all parts of the charge. Therefore, a reasonable reader could conclude that Howard "willfully and knowingly" transmitted the voicemail "for the purpose of issuing a threat, or with knowledge that the [voicemail] [would] be viewed as a threat." *Elonis*, 135 S. Ct. at 2013. This reasonable reading is entirely in compliance with the Supreme Court's directive in *Elonis. See id.*

Accordingly, under the required "liberal" reading of this indictment, we find that the government sufficiently complied with *Elonis* in the inclusion of the required *mens rea* of

"knowingly" or "willfully" for Howard's § 875(c) violation.  *See id.*  As such, no plain error occurred.

**B.  The "True Threat" Jury Instruction**

Turning now to Howard's challenge to the jury instructions at issue, he has a hurdle to overcome because he failed to object to them before the district court.  In fact, Howard jointly submitted the instructions with the government.

Usually, if a defendant fails to object to the jury instructions at trial, and she or he jointly submitted the challenged instruction with the government to the district court, appellate review is precluded under the invited-error doctrine.  *See United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993) ("The doctrine of 'invited error' refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit." (citation omitted)); *see also United States v. Schaff*, 948 F.2d 501, 506 (9th Cir. 1991) ("Under the invited-error doctrine, an error that is caused by the actions of the complaining party will cause reversal 'only in the most exceptional situation.'" (citations omitted)).

Nonetheless, we have recognized that "'invited error' does not necessarily 'foreclose relief when the interests of justice demand otherwise.'" *United States v. Latham*, 358 F. App'x 661, 664–65 (6th Cir. 2009) (per curiam) (citing *United States v. Barrow*, 118 F.3d 482, 491 (6th Cir. 1997)).  Specifically, "where 'the government [i]s as much a[t] fault for inviting the error as the defendant' and 'the defendant . . . is claiming that his constitutional rights have been violated,' the interests of justice are not served by a strict application of the waiver doctrine.'" *Id.* (citing *United States v. Savoires,* 430 F.3d 376, 381 (6th Cir. 2005) (quoting *Barrow,* 118 F.3d at 491)).

Still, absent this exception, in most circumstances when a defendant fails to object to an improper jury instruction, we review the appellate challenge only for plain error, an inquiry that "requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *United States v. Mahbub*, 818 F.3d 213, 229 (6th Cir. 2016).

Howard urges us to apply the exception and marshals the Supreme Court's directives in *Elonis* to argue for reversal based on clearly erroneous jury instructions. *See* 135 S. Ct. at 2011. Specifically, Howard argues that the district court violated *Elonis* by instructing that a violation of § 875(c) could be based on only a negligent *mens rea*. In this regard, Howard challenges the following instruction:

> In evaluating whether the communication contained a, quote, true threat, close quote, you should consider whether in light of the context a reasonable person would believe that the statement was a serious expression of an intention to inflict bodily injury . . .

(R. 49: Trial Trans., PageID 564).

Howard claims that the instruction's reference to "a reasonable person" contradicts a passage from *Elonis*, in which the Court explained that the "'reasonable person' standard . . . is inconsistent with 'the conventional requirement for criminal conduct—*awareness* of some wrongdoing.'" (Appellant Howard Br. at 32 (citing *Elonis,* 135 S. Ct. at 2012 (citation omitted))).

While we agree with Howard that in *Elonis*, the Court did conclude that a *mens rea* must be read into an § 875(c) violation in order to "separate wrongful conduct from 'otherwise innocent conduct,'" *Elonis*, 135 S. Ct. at 2010 (quoting *Carter v. United States*, 530 U.S. 255, 269 (2000)), we disagree with Howard's application of *Elonis* to the facts at hand. Certainly, *Elonis* prohibited a negligence scienter from "support[ing] a conviction under Section 875(c)," 135 S. Ct. at 2014, holding instead that only a *mens rea* of "willfulness" or a *mens rea* of "knowledge" will support a conviction. *Id.* at 2012–13 (concluding "[t]he mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat").[3] But, there was no violation of *Elonis* in this case. The district court here complied with *Elonis* when it instructed as to element two of § 875(c), given it requested that jurors

---

[3]Note, that the Court declined to decide whether a *mens rea* of recklessness suffices for liability under § 875(c).

consider "either" Howard's "purpose of issuing a true threat" or his "knowledge that the communication would be understood as a true threat":

> For you to find the defendant guilty of Count 1 you must be convinced that the government has proved each and every one of the following elements beyond a reasonable doubt. A, that the communication was transmitted in interstate commerce; B, that the defendant transmitted the communication either with the *purpose* of issuing a true threat or with *knowledge* that the communication would be understood as a true threat; that the communication contained a true threat to murder Eric Holder. That's C; A, B, and C I just read to you.

(R. 49: Trial Trans., PageID 562–63) (emphasis added).

Importantly, however—and contrary to Howard's reading of the case—although *Elonis* rejected the "reasonable person-negligence" standard for element two of § 875(c), *see* 135 S. Ct. at 2012–13, the Supreme Court did not alter the framework in which jurors should evaluate a "true threat" under element three. Therefore, following *Elonis*, the elements of an § 875(c) violation should be understood largely in the same way as before that decision, with only the addition of defendant's subjective intent requirement in element two: (1) the defendant sent a message in interstate commerce; (2) the defendant *intended* the message as a threat; and (3) *a reasonable observer* would view the message as a threat. *See Elonis*, 135 S. Ct. at 2011; *Jeffries*, 692 F.3d at 478, *abrogated in part by Elonis*, 135 S. Ct. 2001; *see also Doggart*, 906 F.3d at 510 (emphasis added).

With this in mind, then, the following instruction provided by the district court in this case was in compliance with *Elonis*.

> In evaluating whether the communication contained a, quote, true threat, close quote, you should consider whether in light of the context a reasonable person would believe that the statement was a serious expression of an intention to inflict bodily injury and whether the statement was made for the purpose of furthering some goal through the use of intimidation.
>
> The government does not have to prove the defendant intended to carry out the threat or was even capable of carrying out the threat at the time it was made. The government is not required to prove the defendant made the targeted individual feel threatened or that the targeted individual even knew about the threat against him.

(R. 49: Trial Trans., PageID 563–64).

In fact, rather than conflict with *Elonis*, this instruction actually contextualized the subjective-intent requirement handed down by the Supreme Court. That is because the language likely directed jurors to make pragmatic inferences about Howard's *mens rea* at the time he was transmitting the voicemail to Holder, through the more graspable concept of a "reasonable person." *See Regaldo Cuellar v. United States*, 553 U.S. 550, 567 n.8 (2008) ("[W]here the consequences of an action are commonly known, a trier of fact will often infer that the person taking the action knew what the consequences would be and acted with the purpose to bring them about."); *see also United States v. Clemons*, 738 F.3d 1, 12 (1st Cir. 2013) ("It is rare that a jury would find that a reasonable speaker would have intended a threat under the particular facts of a case but that a competent defendant would not.").

For these reasons, the jury instructions given by the district court were proper and certainly not in plain error.

## C. Sufficiency of the Evidence

Finally, Howard argues that the evidence presented is insufficient to justify his conviction under § 875(c) because the government failed to prove (1) that a reasonable observer would have viewed his voicemail as a "true threat," or (2) that he intended the message to be a "true threat" to Holder.

We review the district court's denial of Howard's motion for judgment of acquittal de novo. *See United States v. Vichitvongsa*, 819 F.3d 260, 270 (6th Cir. 2016). When reviewing the sufficiency of the evidence, we assess whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Houston,* 792 F.3d 663, 669 (6th Cir. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (internal quotation marks omitted)). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Lowe*, 795 F.3d 519, 522–23 (6th Cir. 2015) (quoting *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010)).

As noted, the elements of an § 875(c) violation are "(1) the defendant sent a message in interstate commerce; (2) a reasonable observer would view the message as a threat; and (3) the

defendant intended the message as a threat." *Elonis*, 135 S. Ct. at 2011; *Jeffries*, 692 F.3d at 478, *abrogated in part by Elonis*, 135 S. Ct. 2001; *see also Doggart*, 906 F.3d at 510. Because Howard concedes that the government has provided sufficient evidence to prove element one, we only analyze the government's evidence in supporting elements two and three.

### i.        The Threat

"Pertinent definitions of threat all revolve around a single theme: an expression of an intent to inflict loss or harm." *Doggart*, 906 F.3d at 510; *see Jeffries*, 692 F.3d at 483–84 (Sutton, J., *dubitante*); *see also Elonis*, 135 S.Ct. at 2008; *id.* at 2014 (Alito, J., concurring in part and dissenting in part). In assessing threats, this circuit has relied upon commonly understood dictionary definitions of the word. For example, *Doggart* referenced a number of widely available sources when explaining how this circuit evaluates "true threats" under various criminal statutes.

> [T]he *Oxford English Dictionary* says: "[T]o declare (usually unconditionally) one's intention of inflicting injury upon" a person. 11 *Oxford English Dictionary* 353 (1933). So does *Webster's Second*: "*Law*, specif., an expression of an intention to inflict loss or harm on another by illegal means." *Webster's New International Dictionary* 2633 (2d ed. 1942). And so too does *Black's*: "A communicated intent to inflict harm or loss on another." *Black's Law Dictionary* 1708 (10th ed. 2014).

*Doggart*, 906 F.3d at 510.

Measured by these definitions, Howard's voicemail qualified objectively as a "threat." Indeed, to establish that a threat was made, the government needed to do no more than simply play the audible recording that Howard left on Holder's phone. The voicemail began with this vow made to the former attorney general: "I'm going to kill you. I am going to murder you." (R. 49: Trial Trans. Lamb, PageID 500–01). Howard could not have been any clearer in his threat.

Furthermore, in the ensuing sentences of his voicemail, Howard also appears to provide a motive for his desire to "kill" or "murder" Holder. Howard describes himself as an "unconstitutional[ly] convicted prisoner by the Common Pleas Court of Cuyahoga County of the State of Ohio"—a conviction, he seems to suggest, is in violation of the constitutional

prohibition against double jeopardy. *Id.* Finally, after restating his name at the end of the message, Howard reiterates the perceived injustices against him, which he seems to imply have been perpetrated on Howard by the former attorney general's Justice Department. *See id.*

Despite the chilling nature of the voicemail, Howard maintains that because he had never met Holder, and had no need to threaten him, a reasonable observer would not have understood his message as an "objectively serious expression of an intent to inflict loss or harm." (Appellant Howard Br. at 5, 42); *see Doggart*, 906 F.3d at 510. We disagree.

Consider *Doggart*, where our court found a threat based on the defendant's statement to a confidential informant that "those guys . . . [have] to be killed. Their buildings need to be burnt down." 906 F.3d at 511. In reaching this holding, we determined that "[a] reasonable observer eavesdropping on that conversation would have understood [the] words to be a serious expression of [defendant's] intent to inflict harm." *Id.* Similarly here, a reasonable person who eavesdropped on Howard's voicemail to the former attorney general would have perceived the threat to represent Howard's "serious expression of his intent to inflict harm." *Id.* Although Howard's message may have been somewhat jumbled, "[n]othing about the context of the [voicemail] suggested he was joking," *id.*, particularly given that he seemed to provide some motive for wanting to kill Holder—his perception of past injustice inflicted upon him by the former attorney general's Justice Department. In addition, the fact that Howard made five consecutive calls that afternoon suggests he was not engaged in a "passing fancy"; instead, he was determined to navigate Covington's voicemail system in order to deliver his threat directly to the person he wanted to threaten. *Doggart*, 906 F.3d at 510.

Therefore, viewing the evidence in a light most favorable to the prosecution, it was sufficient for a reasonable jury to conclude that Howard communicated an objective threat to "murder" or "kill" the former attorney general.

### ii.     Intent of a Threat

Howard challenges the sufficiency of the evidence for element three using similar arguments made in challenging the sufficiency of proof for element two: that the government failed to offer evidence demonstrating his subjective intention of issuing a threat to Holder.

Howard also argues that his "nonsensical diatribe," should be taken less seriously in comparison to the threats issued by defendants in other cases, such as *Elonis*, 135 S. Ct. at 2012, and *United States v. Elonis*, 841 F.3d 589, 600 (3d Cir. 2016) ("*Elonis II*"). (Appellant Howard Br. at 42–45). Howard further emphasizes that because he had never actually met the former attorney general, he neither "wanted Eric Holder to resolve any type of ends for [him]," nor did he have "any need to express a threat." (R. 49: Trial Trans, Page ID 546). We find none of these arguments persuasive.

Given that a threat involves a defendant's "expression of an intent to inflict loss or harm," it seems apparent that Howard's declaratory statements, where he pledges to both "murder" and "kill" Holder—both of which preceded his detailed description of the injustices inflicted upon him by the Justice Department—imply the requisite *mens rea* under *Elonis* of either "willfully" or "knowingly" issuing a threat to the former attorney general. *See* 135 S. Ct. 2001. Howard argues that evidence of his subjective intent is rebutted by (1) the fact he identified himself on the voicemail prior to threatening Holder; and (2) the fact that he placed the telephone call all the way from Cleveland, Ohio. But these defenses are irrelevant, given the unmistakable seriousness of the voicemail message.

Importantly as well, and as instructed by the district court to the jury, to convict a defendant under § 875(c):

> The government does not have to prove the defendant intended to carry out the threat or was even capable of carrying out the threat at the time it was made. The government is not required to prove the defendant made the targeted individual feel threatened or that the targeted individual even knew about the threat against him.

(R. 49: Trial Trans., PageID 564).

This instruction comports with circuit precedent, as we have consistently upheld convictions based on an expression of subjective intention to threaten the victim, even if the threat is not feasible for the defendant to carry out, or the defendant does not have an ability to do so. *See United States v. Houston*, 683 F. App'x 434, 439 (6th Cir. 2017). Rather, the standard of evaluating "intent" in relation to threats is appropriately low, given the seriousness of these criminal statutes: if a jury could conclude that the defendant "intended his threats to

influence" a victim or others "through" intimidation, then a "true threat" and the defendant's intention can be established. *Id.* at 439 ("While it is not clear from the record that Houston's girlfriend actually doubted whether Houston would follow through on his threats, that fact is irrelevant here because a statement can be found to be a 'true threat' even if the defendant lacks the ability to make good on his promised aggression."); *see also United States v. Alkhabaz*, 104 F.3d 1492, 1495 (6th Cir. 1997); *United States v. Glover*, 846 F.2d 339, 344 (6th Cir. 1988).

Considering the following, and viewing the evidence in the light most favorable to the prosecution, we hold that a reasonable jury could have concluded that the contents of Howard's voicemail—in which he claimed he was going to "kill" and "murder" Holder after listing the perceived injustices inflicted against him by the former attorney general's Justice Department—demonstrate his subjective intent to issue a threat to the former attorney general in violation of § 875(c).

## III.

To summarize, we hold that (1) the indictment issued to Howard contained all of the essential elements required for the government to allege an § 875(c) violation; (2) the district court's "true threat" jury instruction under § 875(c) was not in error; and (3) the government offered sufficient evidence establishing the three elements of an § 875(c) threat offense. Consequently, we **AFFIRM** the judgment of the district court in full.

---

**CONCURRING IN PART AND IN THE JUDGMENT**

---

NALBANDIAN, J., concurring in part and concurring in the judgment. I concur with the result the court reaches here, and I concur in the majority's disposition of the non-indictment claims. But I think a different approach is warranted to evaluate Howard's challenge to the sufficiency of this indictment.

Howard challenged his indictment's sufficiency for the first time on appeal. But Rule 12 requires a defendant to challenge an indictment before trial. Fed. R. Crim. P. 12(b)(3)(B) (A motion alleging a defect in an indictment "must be raised by pretrial motion . . . ."). The question this court must answer is: What does Howard's failure do to our review? The majority answers this question with plain-error review, citing *United States v. Soto*, 794 F.3d 635, 655 (6th Cir. 2015).[1] But the circuits are split on how to review these challenges. 1 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 123 nn. 25.25, 25.50 (4th ed. 2019). Some circuit courts evaluate challenges like the kind Howard brought for plain error. *See, e.g.*, *United States v. Fairley*, 880 F.3d 198, 206–08 (5th Cir. 2018). But some don't. *See, e.g.*, *United States v. Spangler*, 810 F.3d 702, 711 (9th Cir. 2016).

Before the 2014 Amendments to Rule 12 and before *Soto*, this court fell into the latter camp. It reviewed untimely motions to challenge an indictment's sufficiency under the liberal construction standard not for plain error. *See, e.g.*, *United States v. Gibson*, 409 F.3d 325, 331 (6th Cir. 2005) (construing "a challenge to an indictment [] brought for the first time after the defendant has been convicted . . . liberally in favor of its sufficiency" (internal quotation marks omitted) (quoting *United States v. Gibson*, 513 F.2d 978, 979 (6th Cir. 1975))); *United States v. Kuehne*, 547 F.3d 667, 695–96 (6th Cir. 2008) (quoting *United States v. Gatewood*, 173 F.3d 983, 986 (6th Cir. 1999)) (same).

---

[1]I realize that the majority opinion applies liberal construction as part of its plain error analysis. My quibble is that we should apply liberal construction only and not plain error.

The question is whether *Soto* altered this standard. *Soto* walked through this court's pre-2014 treatment of Rule 12 motions raised for the first time on appeal. 794 F.3d at 649–50 (describing our treatment as "inconsistent" and that we sometimes treated those untimely motions as "forfeiture subject to plain-error review" or as "true waiver" or sometimes "avoided resolving the proper characterization and conducted plain-error review in the alternative"). In 2014, the Advisory Committee amended Rule 12. It removed "waiver" from the rule. And it added a good cause standard of review for motions that a defendant fails to timely make in the district court. So *Soto* interpreted the amendment's effect on how courts analyze untimely Rule 12 motions.

The *Soto* court found that the Committee amended Rule 12 for two reasons. First, the Committee wanted to prevent courts from treating a failure to file a timely pretrial motion as an absolute bar to appellate review. *Id.* at 652. Second, it found the good cause addition "clarifie[d] that district courts should not apply different standards to different types of Rule 12(b)(3) motions." *Id.* at 651–52. And it found that the good cause standard "applie[s] to [] district courts alone." *Id.* at 653, 655. But it left unchanged how this court should review untimely motions raised for the first time on appeal. *Id.* at 655. This left the *Soto* court with a separate, though related, question: "[W]hether to apply the good-cause or plain-error standard to issues raised for the first time on appeal." *Id.* It found that plain-error review applies. *Id.*

But *Soto*, by its own terms, did not change this court's method for reviewing all untimely Rule 12 motions. It only resolved an existing "inconsisten[cy]" in the way this court resolved certain Rule 12 motions made for the first time on appeal. *Id.* at 649. And *Soto* cabined its opinion narrowly; it "h[e]ld that plain-error review applies to *claims of misjoinder* raised for the first time on appeal." *Id.* at 655 (emphasis added); *see also id.* at 656 ("For these reasons, we *hold* that, when a defendant . . . argues for the first time on appeal that *offenses were improperly joined*, we review his or her claim for plain error." (emphasis added)).

To be fair, although *Soto* was about misjoinder under Rule 12 and not the insufficiency of an indictment, its logic would typically apply to our situation. There does not appear to be a good reason why *Soto*'s reasoning, and therefore the plain-error standard, would be limited to misjoinder challenges and not extend to any motion alleging a defect in an indictment under Rule

12(b)(3)(B).  Even so, I believe that our post-*Soto*, sufficiency opinions compel us to liberally construe Howard's indictment rather than apply plain-error review.  Two months after *Soto*, this court addressed a defendant's untimely challenge to his indictment's sufficiency.  *United States v. Olive*, 804 F.3d 747 (6th Cir. 2015).  The defendant argued for the first time on appeal that his indictment failed to allege elements of the charged crime.  This court usually reviews those challenges de novo.  *Id.* at 752.  But we explained that this court "construe[s] [the indictment] liberally in favor of its sufficiency" if the defendant raises the challenge for the first time on appeal.  *Id.* (quoting *Gibson*, 409 F.3d at 331).  *Olive* did not mention plain-error review.  In 2017, this court again dealt with a challenge to an indictment's sufficiency raised for the first time on appeal.  *See United States v. Meade*, 677 F. App'x 959 (6th Cir. 2017).  Again, this court liberally construed the indictment in favor of its sufficiency.  *Id.* at 964–65.  And again, we did not mention plain-error review.[2]

Most recently, a few months ago, this court decided *United States v. Rankin*, 929 F.3d 399 (6th Cir. 2019).  The defendant challenged the sufficiency of his indictment.  *Id.* at 403.  He did so "early in the litigation[.]"  *Id.* at 405 n.1.  So we reviewed the indictment's sufficiency de novo.  *Id.* at 405.  But we explained how this court *would* evaluate an untimely challenge to an indictment's sufficiency: "[w]hen the defendant challenges the indictment for the first time after his conviction, the indictment is 'construed liberally in favor of its sufficiency.'"  *Id.* at 405 n.1 (quoting *Olive*, 804 F.3d at 752).  And we did not mention plain-error review.  Based on these cases, I would liberally construe Howard's indictment to resolve the challenge he raises against it for the first time on appeal.[3]

Even liberally construing the Howard indictment here in favor of its sufficiency, however, I believe it contains error.  An indictment is sufficient if it "expressly . . . set[s] forth all the elements necessary to constitute the offence intended to be punished."  *Hamling v. United*

---

[2]But we did review other challenges before that panel for plain error.  *See, e.g.*, *United States v. Meade*, 677 F. App'x 959, 976 (6th Cir. 2017) (evaluating *a jury instruction challenge* raised for the first time on appeal "for plain error only").

[3]This court also decided *United States v. Shelton*, No. 18-6183, 2019 WL 5205989 (6th Cir. 2019) after it decided *Soto*.  The *Shelton* panel reviewed a defendant's challenge to an indictment made for the first time after trial for plain error.  It cited only *Soto* for its standard of review.  But *Shelton* dealt with "alleged [internal] inconsistencies in the indictment" and not a sufficiency challenge like the one before this panel.  *Id.* at *6.

*States*, 418 U.S. 87, 117 (1974) (cleaned up). And liberally construed, an indictment contains no error even if it fails to expressly mention every element of the criminal charge so long as it provides the offense's elements in another manner. *E.g.*, *Kuehne*, 547 F.3d at 695–96 (providing the offense's elements by "track[ing] the [offense's] statutory language"); *United States v. Hart*, 640 F.2d 856, 857–58 (1981) (finding the indictment satisfactory because it charged the offense's elements "by referenc[ing] [] the statute").

> Howard's indictment alleged that:

> On or about November 12, 2017, in the Northern District of Ohio, Eastern Division, and elsewhere, ATREL HOWARD, did knowingly and willfully transmit in interstate and foreign commerce a communication containing a threat to injure the person of another, to wit: ATREL HOWARD called E.H., a former United States government official known to the grand jury, and left a voicemail threatening to murder E.H., all in violation of Title 18, Section 875(c), United States Code.

(R. 8, Indictment, PageID 14.)[4] No part of Howard's indictment—explicitly or otherwise—alleged he had the mens rea necessary for a § 875(c) violation. *See United States v. Elonis*, 135 S. Ct. 2001, 2012 (2015) (requiring the government to prove more than "only that a reasonable person would regard [the] communications as threats" for § 875(c) convictions but refusing to decide whether recklessness suffices). Charging defendants with "knowingly and willfully transmit[ting] . . . a communication containing a threat" is different than accusing the defendant of having knowledge that others would view the communication as a threat.

One of our pre-*Elonis* opinions shows this difference. *See United States v. DeAndino*, 958 F.2d 146 (6th Cir. 1992). Section 875(c)'s text does not specify any heightened mental element. This court "*presumed*" that "general intent is . . . the required element." *Id.* at 148–49 (cleaned up). So at the time, we only required that a § 875(c) indictment charge that a reasonable person would take the defendant's communication as a threat. After *Elonis*, there is a heightened mens rea requirement for the § 875(c) element that the communication contains a threat. 135 S. Ct. at 2012. And after *Elonis*, our old § 875(c) interpretation is no longer good law. Neither is

---

[4] 18 U.S.C. § 875(c) explains that: "Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."

our *DeAndino* opinion where we upheld an indictment's sufficiency based on our pre-*Elonis* understanding of § 875(c). *See United States v. Houston*, 792 F.3d 663 (6th Cir. 2015). But this court's reasoning in upholding the *DeAndino* indictment, given our pre-*Elonis* understanding of § 875(c), exposes the flaws in Howard's indictment.

In *DeAndino*, this court considered an indictment charging a § 875(c) violation that tracked Howard's indictment almost exactly. 958 F.2d at 147. In DeAndino's indictment, the government charged him with "knowingly and willfully transmit[ting] in interstate commerce . . . a communication containing a threat to injure" the victim. *Id.* (cleaned up). DeAndino argued that his indictment "did not allege that he possessed a specific intent to threaten." *Id.* And so it must fail as a matter of law. But under the pre-*Elonis* regime, a § 875(c) indictment needed only to "track[] the language of the statute[.]" *Id.* And DeAndino's indictment did that. *Id.* at 148, 150. So this court found DeAndino's indictment sufficient. *Id.* at 150 ("The general intent presumed by this court . . . to be required for a violation of most criminal statutes is sufficiently indicated in the indictment as it now stands, which tracks the language of the statute."). That we found the *DeAndino* indictment sufficient because we understood § 875(c) as a general intent crime convinces me that Howard's near-identical indictment cannot satisfy *Elonis* and contains error.[5]

---

[5]This court's reasoning in *United States v. Heller* further reveals the error in Howard's indictment. 579 F.2d 990 (6th Cir. 1978). The *Heller* indictment charged a different crime—a § 875(a) violation. At the time, § 875(a) explained that "[w]hoever transmits in interstate commerce any communication containing any demand or request for a ransom or reward for the release of any kidnapped person, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both." *Id.* at 993 (quoting 18 U.S.C. § 875(a)). This court interpreted § 875(a) as a specific intent crime even before *Elonis*; a § 875(a) conviction requires the defendant had an "intent to extort." *Id.*

Heller's indictment alleged that he "wilfully and knowingly did transmit and cause to be transmitted in interstate commerce . . . a telephone communication . . . [that] contained a demand and request for $50,000 as ransom and reward for the release of [the victim], who had been kidnapped and was then held for ransom and reward." *Id.* at 999. This court rejected that indictment as "fatally defective" because "it d[id] not charge the appellant with having had an intent to extort." *Id.* It explained that "the adverbs 'wilfully' and 'knowingly'" only modify "the verbs . . . 'transmit and cause to be transmitted in interstate commerce.'" *Id.* Those adverbs did not modify the defendant's "demand." *Id.* In fact, this court explained, "only a most tortured manner, and [] a complete disregard for the most basic rules of grammatical construction" would allow it to find the indictment sufficiently charged the defendant with a § 875(a) violation. *Id.*

Although Heller's indictment dealt with § 875(a) and not § 875(c), I think its analysis applies here.

And nothing else in Howard's indictment can save it. Howard's indictment also charged him with actions "all in violation of Title 18, Section 875(c), United States Code." But "the words of [§ 875(c)] itself" do not "set forth all the elements necessary to constitute the offence intended to be punished." *Hamling*, 418 U.S. at 117 (cleaned up); *see also, e.g.*, *Kuehne*, 547 F.3d at 696; *Hart*, 640 F.2d at 857–58. If it did, the *Elonis* Court need not have read into § 875(c) a mens rea greater than general intent. So referencing § 875(c), without more, cannot save Howard's indictment.

Howard's indictment describing Howard's statements as "threatening to murder E.H." also cannot save it. That allegation only characterizes Howard's statements as a threat and describes the contents of the Howard's alleged threat. It does not, on its face, allege Howard had any specific intent to make the threat. And in fact, the *Elonis* Court's discussion of § 875's text supports this position. The *Elonis* defendant argued that the Supreme Court should find § 875(c) requires that a defendant know others will view the communication as a threat or requires the defendant have the purpose of issuing a threat. To support his argument, he made a textual plea. He asked the Court to agree that "every definition of 'threat' or 'threaten' conveys the notion of an intent to inflict harm." *Elonis*, 135 S. Ct. at 2008 (quoting Petitioner's Brief). Although the Court ultimately adopted the defendant's position, it did not adopt the defendant's textual argument. The Court explained that "threat" only "speak[s] to what the statement conveys—*not to the mental state of the author*." *Id.* (emphasis added). For example, "an anonymous letter that says 'I'm going to kill you' is 'an expression of an intention to inflict loss or harm' *regardless of the author's intent*." *Id.* (emphasis added). Although the victim of that letter "has received a threat," the author might "believe[]," even if "wrongly[,]" that the message "will be taken as a joke." *Id.*

Like the example in *Elonis*, the victim here received a threat. Howard left a voicemail telling E.H. "I am going to murder you." But the indictment's description of the voicemail's contents as "threatening to murder E.H." only does that. It describes the voicemail's contents. It does not take the further step required by *Elonis* and allege that Howard made the voicemail with any specific intent of threatening Holder. It leaves open the possibility that Howard might have

made the voicemail with the belief, though the wrong belief, that the message "will be taken as a joke."

Last, I find that the indictment's factual allegations fail to imply the requisite § 875(c) intent under *Elonis*. *See United States v. Resendiz-Ponce*, 549 U.S. 102, 107–08, 108 n.4 (2007) (finding an indictment sufficient when it "implicitly alleged" a criminal statutory element). Two other federal appellate courts have dealt with the exact question before us: Does the indictment charging a § 875(c) violation sufficiently allege the requisite mens rea? To reach their respective answers, those courts specifically answered if the indictments before them alleged enough facts to impliedly satisfy *Elonis*. Their reasoning and conclusions are instructive on the sufficiency of Howard's indictment.

The Eleventh Circuit dealt with a near-identical § 875(c) indictment. *See United States v. Martinez*, 800 F.3d 1293 (11th Cir. 2015) (per curiam). The indictment alleged the defendant "did knowingly transmit in interstate commerce a communication, that is an email form response, to WFTL Radio, which communication contained a threat to injure the person of another, in violation of Title 18, United States Code, Section 875(c)." *Id.* at 1294. The *Martinez* court found the indictment "fail[ed] to allege [the defendant's] *mens rea* or facts from which her intent can be inferred" to satisfy *Elonis*. *Id.* at 1295. The indictment "allege[d] only that a reasonable person would regard [her] communication as a threat." *Id.*

The indictment in *United States v. Khan*, however, was much different than Howard's. 937 F.3d 1042 (7th Cir. 2019). In *Khan*, the Seventh Circuit upheld the § 875(c) indictment before it. *Id.* at 1056. The *Khan* indictment failed to "explicitly accuse [the defendant] of intending to send a threat, or [to] allege that he knew the posts would be viewed as threats." *Id.* at 1049. But it satisfied *Elonis* because the indictment quoted the three threats the defendant made. *Id.* at 1050, 1049 (explaining the indictment "quoted the May 7 (Post 3), May 8, and May 14 posts"). The most explicit one quoted explained that:

> The gun is cocked and ready to go. . . . Now I'm gona [sic] get my revenge, and that involves putting bullets in someone's body, so get out of the way or I'll literally shoot at them as well and we'll end up with a much bigger scenario on our hands. I'm not leaving America without getting revenge even if it costs me my life. And that's that.

*Id.* at 1048 (alteration in original).  In another threat quoted in the indictment, the defendant posted:  "I want a high net worth individual to shoot.  I want this to be a real human tragedy. . . . Ima [sic] hunt aggressively tonight.  Keep an eye out of ideal victims.  If I don't catch nobody tonite [sic] then another nite [sic]."  *Id.* at 1047–48.  The *Khan* court found that the indictment's factual descriptions of the defendant's threats "denote[d] purpose, knowledge, and intent" and thus satisfied *Elonis*.  *Id.* at 1050; *see id.* at 1049–50 (explaining that "[a]n implicit allegation of an element of a crime is enough; the indictment need not specifically allege every component part of the offense" (cleaned up)).

Like the *Martinez* and the *Khan* indictments, Howard's indictment does not "explicitly accuse" Howard of intending to send a threat.  But in all other respects, Howard's indictment is almost identical to the one in *Martinez* and unlike the one in *Khan*.  Howard's indictment contains only one factual allegation, that Howard "threaten[ed] to murder E.H."  The *Martinez* indictment alleged the defendant's email "contained a threat to injure the person of another," almost identically tracking Howard's.  Both decisions, while not binding, persuade me that Howard's indictment does not "implicitly allege[]" the requisite specific intent.

Even though I believe that the indictment here was defective, I agree that Howard's claim fails because harmless error still applies.  *See Rankin*, 929 F.3d at 404; *United States v. Cor-Bon Custom Bullet Co.*, 287 F.3d 576, 580 (6th Cir. 2002).  And the error here is harmless.

We have found an indictment's failure to charge an element of a crime harmless (1) when the defendant never alleged the indictment's failure "prevented [him] from preparing a defense or caused [him] surprise or prejudice" and (2) when the record did not "suggest that [the defendant] was disadvantaged in any way by the indictment's alleged deficiency."  *Id.* (finding the indictment's deficiency harmless because it did not cause the defendant to suffer any prejudice and the defendant "ha[d] not even alleged prejudice").

Howard's briefs do not once argue that he suffered any prejudice as a result of the indictment's deficiency.  (Appellant's Br. at 20–27.)  He argues that the indictment's failure to satisfy *Elonis* violated his Fifth and Sixth Amendment rights.  (*Id.* at 20.)  But he does not lay out how the error and the violation changed the outcome of the criminal proceedings or prejudiced

him in any way.  He does not, for example, allege that the indictment's failure "prevented [him] from preparing a defense or caused [him] surprise or prejudice."

And the indictment's defect did not prevent Howard from preparing a defense at trial. The court and the government repeated early and often that to prove a § 875(c) violation, the government must satisfy *Elonis*.  (*See, e.g.*, R. 49, Trial Trans., PageID 478 (explaining in the government's opening statement that it must prove, and the jury must decide whether Howard "*intended* to make a threat" (emphasis added)); *id.* (The government explained that "[t]his all comes down to whether the defendant made the call, left the voicemail, and *intended* to make that threat." (emphasis added)).)  Howard's attorney Jordan did not oppose those statements. Instead, he repeatedly pointed the jury to the voicemail's content to assert that the voicemail is, at best, confusing and does not reflect Howard's knowledge or purpose in communicating a threat.  (*Id.* at 479; *id.* at 582 ("[W]e look at the whole message, [and] quite frankly, I don't know what it means."); *id.* at 582–83 ("[N]onsense cannot be a threat, and it cannot be a threat if there's no purpose for furthering a goal. There's no goal here. . . . You have to be able to see from the call what was the purpose . . . It doesn't make sense.  It's nonsense.").)  So while I find that Howard's indictment, even liberally construed, contains error, I find that error harmless. I join the court's opinion affirming the district court's decision and insofar that it does not conflict with my reasoning.