NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0328n.06

No. 21-5716

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 09, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| v. | ) ) | |
| RODNEY EUGENE BROWN, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: NORRIS, SUHRHEINRICH, and CLAY, Circuit Judges.

SUHRHEINRICH, Circuit Judge. Defendant Rodney Eugene Brown failed to register as a sex offender after moving from Michigan to Tennessee, as required by the Sex Offender Registration and Notification Act (SORNA), 34 U.S.C. § 20913. For that he was indicted, tried, and convicted of violating SORNA's enforcement provision, 18 U.S.C. § 2250(a). On appeal, Brown claims that he was denied a right to a fair trial because (1) the district court refused his proffer to stipulate to his prior sex offense, and (2) the government used a hybrid/fact opinion witness without providing a foundation for the witness's opinion testimony and without a limiting instruction.

Because Brown waived the first argument and the witness's testimony was properly admitted as background evidence (and any error was harmless), we AFFIRM.

**I.**

In SORNA Congress created "a comprehensive national system for the registration of [sex] offenders" "[i]n order to protect the public from sex offenders and the offenders against children." 34 U.S.C. § 20901. The Act requires such offenders to register "in each jurisdiction where the offender resides." *Id.* at § 20913(a). SORNA's criminal counterpart provides that one who (1) is required to register under SORNA, (2) travels in interstate commerce, and (3) knowingly fails to register or update a registration, shall be subject to no more than ten years in prison. 18 U.S.C. § 2250(a); *United States v. Coleman*, 675 F.3d 615, 618 (6th Cir. 2012).

Brown is a two-time sex offender under Michigan law—once in 1987 for third degree criminal assault, and again in 1992 for second degree criminal sexual conduct. Brown received probation for the 1987 conviction and eight to fifteen years' imprisonment for the more serious 1992 conviction, defined as sexual conduct with a "person [who] is under 13 years of age." *See* Mich. Comp. Laws § 750.520c(1)(a). Because the 1992 conviction is a Tier III offense under SORNA, Brown is required to register (quarterly) for life. *See* 34 U.S.C. §§ 20911(4)(A)(ii); 20915(a)(3).

Brown was released from custody in 2005 after serving thirteen years in prison and dutifully registered in Michigan until June 2015, when he moved to Memphis, Tennessee to be with his partner, Cheryl Lucien. He did not notify either state of the residence change. However, in July 2018 he applied for a Tennessee identification card. That act alerted the State of Michigan, which had listed Brown as an absconder. Michigan in turn notified the Tennessee Bureau of Investigation, who reached out to the Supervisory Deputy United States Marshal James Edge of the Western District of Tennessee. Edge located Brown in the National Sex Offender Registry,

(*id.*), obtained certified records of Brown's Michigan convictions, and determined that Brown's 1992 offense carried a lifetime registration requirement.

Brown was indicted in November 2018 on one count of failing to register as a sex offender in Tennessee from July 2016 to October 2018. Hoping to keep the nature of his 1992 conviction from the jury, Brown filed a motion in limine, offering to stipulate to the fact of the 1992 conviction. The government rejected the offer, arguing that both convictions were relevant to the first and third elements of § 2250(a). Brown's motion was held in abeyance while Brown changed counsel.

At the final pretrial conference Brown's new counsel renewed Brown's motion in limine, asking the government to stipulate that Brown "ha[d] been convicted of a sexual offense that required registration" "without getting into details of the facts of the offenses." The district court "underst[oo]d" the "sensitive" nature of the sex offense, but agreed with the government that "it also define[d] the element of the offense." The court therefore proposed that Brown stipulate to the first and third elements of the offense—that he was convicted of a prior offense that required him to register under SORNA during the timeframe outlined in the indictment, and that Brown knew this. Brown's counsel stated that he wouldn't stipulate to the third element, because Brown's "whole defense is that his understanding—his mens rea wasn't there." The court then ruled that it could not require the government to accept the stipulation.

Upon conferring privately with Brown, counsel informed the court that, "We'll just waive stipulation, Your Honor. . . . I think it will take away from our defense strategy. . . . You know, having talked to Mr. Brown, I think that we don't need to stipulate."

Edge was the government's principal witness. He provided some background on the SORNA legislation, explained how it interfaces with local and state agencies, and described his

investigation of Brown. The jury found Brown guilty. The district court sentenced him to forty-five months' incarceration and five years of supervised release.

**II.**

Both of Brown's issues on appeal concern evidentiary rulings, which we review for abuse of discretion. *United States v. Kilpatrick*, 798 F.3d 365, 378 (6th Cir. 2015); *see also United States v. Odeh*, 815 F.3d 968, 982 (6th Cir. 2016) (applying abuse of discretion standard to the district court's refusal to order the government to stipulate to a particular fact); *United States v. White*, 492 F.3d 380, 398 (6th Cir. 2007) (applying the standard to rulings on opinion testimony and expert testimony). Non-constitutional evidentiary errors are also subject to harmless error review, which means that "any 'error . . . that does not affect substantial rights must be disregarded.'" *Kilpatrick*, 798 F.3d at 378 (quoting Fed. R. Crim. P. 52(a)). It's up to the government to show harmlessness by a preponderance of the evidence. *Id.* We must consider how the error, not isolated but in relation to all of the testimony, affected the jury. *United States v. Baker*, 458 F.3d 513, 520 (6th Cir. 2006).

Non-objected-to errors are reviewed under a plain-error standard. *United States v. Hall*, 20 F.4th 1085, 1100 (6th Cir. 2022). This requires a defendant to establish (1) an error, (2) that was obvious or clear, (3) that affected the defendant's substantial rights, and (4) also "seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Henry*, 545 F.3d 367, 376–77 (6th Cir. 2008) (citation omitted). This standard "dovetails with the analysis of prejudice required for all district court evidentiary determinations." *United States v. Lopez-Medina*, 461 F.3d 724, 745 (6th Cir. 2006).

**A.**

Brown claims the district court erred by not allowing him to stipulate to his prior conviction, in violation of *Old Chief v. United States*, 519 U.S. 172 (1997). The government maintains this issue is not properly before us, however, because Brown waived it. "Waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation omitted). An issued waived is not reviewable. *Id.* at 733. That's because it "extinguishes an error under Rule 52(b), so we cannot review the supposed error at all." *United States v. Montgomery*, 998 F.3d 693, 697 (6th 2021) (cleaned up); *see also id.* at 697–99 (discussing waiver, invited error, and forfeiture doctrines). A defendant "can only waive a right that he knows of and actively abandons." *Id.* at 697. "[A]greeing in open court with a judge's proposed course of conduct" by formulating a "plain, explicit concession on the record addressing the precise issue later raised on appeal," qualifies as a waiver. *See United States v. Mabee*, 765 F.3d 666, 673 (6th Cir. 2014) (cleaned up) (citing cases); *see also United States v. Jackson*, 995 F.3d 476, 484 (6th Cir. 2021) (finding waiver where defense counsel stated that he "couldn't have, in good faith, objected to his leadership role," and therefore the enhancement was proper); *United States v. Abdi*, 827 F. App'x 499, 506 (6th Cir. 2020) (finding waiver after defendant conceded the issue in open court and then changed position on appeal).

As noted, Brown renewed the motion to stipulate at the final pretrial conference, but after an extended back-and-forth about the government's right to prove its case, and a conference with Brown, counsel "agree[d] [that the court] can't force the Government to stipulate," and then expressly "waive[d] stipulation." That sounds like a "plain, explicit concession on the record addressing the precise issue later raised on appeal," *see Mabee*, 765 F.3d at 673, which means that

Brown effectively conceded that the nature of the 1992 conviction and prison term were admissible—at least for purposes of appellate review.

Not exactly, according to Brown. In his reply brief he states that "the defense pulled its stipulation request," Reply Br. 2, because of the district court's prior rulings that Brown would have to either stipulate that he was required to register under SORNA during the indicted period or stipulate to each element of the offense (except that he had moved to Tennessee). Brown claims that "[f]ailing to agree to the court's suggested modifications was not a relinquishment of the issue and did not require further objection to preserve the matter for appeal." Reply Br. 2 (citing Federal Rule of Evidence 103(b)). Rule 103(b) provides that "[o]nce the court rules definitively on the record – either before or at trial – a party need not . . . [make an] offer of proof to preserve a claim of error for appeal." Fed. R. Evid. 103(b). Had Brown's counsel let matters stand after explaining why he could not stipulate to the third element; he'd probably be right. He was not required to *renew* his objection after the court indicated that it could not force the government to stipulate. But Brown's counsel did not remain seated: he made a conscious choice to *withdraw* the request to stipulate after reading the court's temperature. That intentional statement walks and talks like a waiver. And because of that, we cannot review the issue. *Olano*, 507 U.S. at 733; *Montgomery*, 998 F.3d at 697.[1]

---

[1] We note that Brown could not prevail on this issue in any event. *Old Chief*'s ruling that the government must accept a defendant's offer to stipulate to his prior felon status in a prosecution under the felon-in-possession case statute to prevent unfair prejudice to the defendant, is a "narrow limitation" on the government's prerogative to prove its case with probative evidence. *United States v. Boyd*, 640 F.3d 657, 668 (6th Cir. 2011). As we confirmed in *Odeh*, the *Old Chief* Court "explicitly confined its holding 'to cases involving proof of felon status,'" *Odeh*, 815 F.3d at 982 (quoting *Old Chief*, 519 U.S. at 183 n.7), and we have stayed the course, *see United States v. Luck*, 852 F.3d 615, 624–25 (6th Cir. 2017) (noting that "this court has consistently rejected" defendants' attempts "to expand *Old Chief*'s exception beyond the issue of felon status"; listing cases).

Relatedly, Brown argues that "[o]nce the court decided not to allow the stipulation, it could not then remove decision making from the jury" by ruling as a matter of law that the prior conviction was a qualifying sex offense under SORNA that required him to register for life. (Appellant's Br. at 11.) That is, he claims that the court "removed an element of the offense from the jury's decision-making process—the duty to register." Appellant's Br. 12. But,

**B.**

In his second challenge to the evidence, Brown contends the district court erred in allowing the government to use Edge as both an expert and fact witness because (1) Edge was never disclosed or qualified as an expert; and (2) the jury was not given a limiting instruction on the proper use of his testimony. Brown admits that plain error review applies because he did not object at trial. The government responds that it was not plain error to admit Edge's testimony because (1) Edge's testimony was based on his personal knowledge of the investigation and therefore his statements were background information and not opinions or interpretations; and (2) to the extent he crossed the fact/expert line, his was "obviously qualified to give the challenged testimony" and it was relevant and reliable. The government therefore maintains that there was no plain error. Alternatively, the government argues any error was harmless anyway because the evidence of Brown's guilt was overwhelming.

We agree with the government—Edge was a fact witness, so no limiting instruction was required. Edge's explanations as to how the federal, Tennessee, and Michigan sex offender registries operate, as well as his statements regarding the nature of Brown's prior conviction and his offender status, were all properly admitted as background information. The challenged testimony was "inextricably intertwined with the charged offense," because it was not only "a prelude to the charged offense," but was also "directly probative of the charged offense," ar[ose] from the same events as the charged offense," and "complete[d] the story of the charged offense." *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (citation omitted). Edge explained how and why Brown was charged with violating § 2250(a)—by being convicted of a Tier III sex offense

---

as Brown acknowledges, this court held in *United States v. Paul* that whether a defendant's prior conviction must be registered under SORNA is a matter for the court and not the jury. *See United States v. Paul,* 718 F. App'x 360, 363 (6th Cir. 2017).

under Michigan law and then failing to register after leaving the state based upon his personal knowledge. Edge did not offer his opinion as to Edge's guilt, and his statements were based on materials that the jury possessed and could easily interpret themselves. *See United States v. Manzano*, 793 F. App'x 360, 365 (6th Cir. 2019) (holding that a witness who testified about the meaning of certain legal terms under the Medicare scheme "provided simple background facts (not opinions) about the Medicare program"); *United States v. Young*, 847 F.3d 328, 351 (6th Cir. 2017) (characterizing an agent's testimony about the wiretap and search warrant application process as background information); *see also United States v. White*, 492 F.3d 380, 403 (6th Cir. 2007) (holding average lay person would not have a working knowledge of Medicare reimbursement procedures because "[t]he Medicare program operates within a complex and intricate regulatory scheme"); *cf. United States v. Kilpatrick*, 798 F.3d 365, 384–85 (6th Cir. 2015) (holding that an agent's references to laws and regulations pertaining to campaign contributions to the defendant's civic fund was lay opinion testimony because the jury "would have learned the basic contours of what it means to be a § 501(c)(4) corporation and the campaign contribution limits of certain organizations" by studying the discovery materials).

Edge was asked to review the properly admitted Michigan Sex Offender Registration records, and to read the statute for the 1992 conviction. The nature of the 1992 conviction was also repeatedly listed in those documents. "Explaining the allegations underlying an investigation does not implicate Rule 701." *Kilpatrick*, 798 F.3d at 382. A layperson examining these exhibits would have ultimately deduced the same. *See id.* at 385. Likewise, Edge's statement that Brown's duty to register began in 1987 was a fact, not an opinion, and it could be found in the admitted trial exhibits.

Edge's verification of Brown's signature on post-prison documents was also proper. That Edge did not see Brown sign certain documents upon his release from prison in 2005 is immaterial because Edge became acquainted with Brown's signature while he was carrying out his investigation. In *United States v. Harris*, we held that agents could give lay testimony under Fed. R. Evid. 901(b)(2) regarding the defendant's handwriting since they "did not gain this familiarity for purposes of [the] litigation." 786 F.3d 443, 448 (6th Cir. 2015) (citing Fed. R. Evid. 901(b)(2)). Edge encountered Brown's John Hancock on (1) the Order of Probation in the 1987 conviction, (2) the Explanation of Duties to Register as a Sex Offender in 2005, (3) the application for a Tennessee identification card and affidavit in support, (4) Brown's social security card, Michigan identification card, and Tennessee identification card.

The testimony also satisfied Rule 701. *See Harris*, 786 F.3d at 448. Edge had ample time to compare the signatures during his investigation and the testimony was helpful to the jury in determining whether Brown had knowledge of his duty to register—the third element of § 2250(a). *See id.* at 448–50. And the jury could decide for itself whether that was Brown's signature because the documents were in the record. *See id.* at 450.

## C.

Finally, if there was any error, it was harmless. The government presented overwhelming evidence of Brown's guilt. *See White*, 492 F.3d at 398 (reversal is not required unless the erroneously admitted evidence affected the party's substantial rights). Brown had two prior convictions for criminal sexual conduct—in 1987 and 1992. He failed to register in Tennessee as a sex offender as of November 17, 2020. Brown acknowledged with his initials on the Explanation of Duties to Register as a Sex Offender Form that he understood those duties. Brown knew to register because he registered in Michigan from 2007 up until June 2015. Brown signed Michigan

Offender Verification/Update forms in February, March, and June 2015. These forms indicate that Brown was a Tier III offender, that his registration date was November 27, 1987, that he had to register for life, and that he had two prior offenses for criminal sexual conduct. The forms also explained his registration duties in detail—that Brown was required to verify his address by reporting in-person and providing proof of residency at a local law enforcement agency with jurisdiction over his residence, and that he was required to report his new address before he changes residences to another state. Brown's signature acknowledges receipt of these forms. Brown's signature was consistent across various government documents. And his partner Lucien testified that Brown moved in with her in January or February 2018.

In short, the evidence of Brown's guilt was overwhelming and any potential error in this case did not affect his substantial rights.

**III.**

The judgment of the district court is **AFFIRMED**.