NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0022n.06

No. 22-3932

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jan 18, 2024

KELLY L. STEPHENS, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

KINDELL SMITH,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

---

Before: GRIFFIN, BUSH, and LARSEN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Kindell Smith provided a mixture of controlled substances to an undercover law enforcement officer on two occasions. A jury ultimately convicted him of various federal drugs and firearms offenses. Smith now appeals, arguing that: (1) he was denied a fair trial when the district court improperly admitted evidence that violated Federal Rule of Evidence 404; (2) the district court erred in giving his stipulated jury instructions; and (3) the evidence was insufficient to sustain his conviction for possession of a firearm in furtherance of a drug trafficking crime. Finding no error requiring reversal, we affirm.

I.

In April 2020, law enforcement agencies began investigating Smith for suspected drug trafficking following a woman's fatal drug overdose. Text messages on the woman's phone showed that she likely purchased the drugs from someone she dubbed "Rico Dude Man," so

Narcotics Detective Michael Griffis cold-called the phone number to set up a controlled buy. At the controlled buy, Smith showed up and sold Griffis a little less than half a gram of a mixture of cocaine and fentanyl. Griffis captured this transaction on audio and video recordings.

Just over one month later, Smith called Griffis and said that he had "something" he wanted Griffis to try. By then, Griffis had positively identified Smith and knew that multiple law enforcement agencies were searching for him due to a pending arrest warrant, so Griffis arranged a "buy bust": a controlled buy where law enforcement officers arrest the drug trafficker immediately after the sale. Smith and Griffis planned a meeting, and Griffis separately arranged for three officers to accompany him in his vehicle and for additional officers to be present in the area.

After Detective Griffis arrived at the meeting spot, Smith (along with his co-defendants) arrived in a Jeep. The Jeep pulled up to Griffis's vehicle and Smith—who was the only passenger in the backseat—rolled down his window, knocked on Griffis's window, and gave Griffis a folded piece of paper containing drugs. Immediately thereafter, another officer in Griffis's vehicle rolled down his window and identified himself as law enforcement. The Jeep sped away, but it crashed into a police vehicle moments later. Right after the crash, ATF Special Agents Donald Kopchak and Gerrod Briggs observed Smith lean across the Jeep's backseat, reach underneath the passenger seat, and grip an object. Law enforcement extracted Smith and the others from the vehicle, arrested them, and searched them and the Jeep. The search yielded a pistol with a loaded, extended magazine wedged underneath the passenger seat of the Jeep, where Kopchak and Briggs had previously observed Smith reaching. Law enforcement also found additional drugs, cash, and Smith's cell phone. Testing later confirmed that the substance Smith gave Griffis was a mixture of heroin and fentanyl.

A federal grand jury indicted Smith and his co-defendants on numerous drugs and firearms charges. Only Smith proceeded to trial, where he was found guilty of conspiring to distribute and possess with intent to distribute controlled substances; distributing a controlled substance; possessing with intent to distribute controlled substances; possessing a firearm in furtherance of a drug trafficking crime; and being a felon in possession of a firearm and ammunition. Smith timely appealed.

II.

First, Smith argues that his trial was permeated with improper references to other crimes, wrongs, and acts in violation of Federal Rule of Evidence 404. Because he did not object to these references at trial, we review for plain error. *See United States v. Cowart*, 90 F.3d 154, 157 (6th Cir. 1996). To establish plain error, Smith must demonstrate that "(1) an error occurred; (2) the error was obvious or clear; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Mayberry*, 540 F.3d 506, 512 (6th Cir. 2008).

Smith challenges the admission of three specific types of evidence: (1) testimony linking him to a fatal drug overdose; (2) testimony regarding law enforcement's investigation into him as a known drug dealer and gang member; and (3) social media posts appearing to show him as a gang member. According to Smith, this evidence—even mentioned in passing—violated Rule 404(b). Although Smith's challenges on appeal more accurately relate to Federal Rule of Evidence 403, not Rule 404(b), we nonetheless address them.[1] Rule 404(b) prohibits the use of evidence of

---

[1]Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Any argument Smith could have raised under Rule 403 is, however,

other crimes, wrongs, or acts to prove that a person acted in accordance with a particular character trait on a particular occasion. Fed. R. Evid. 404(b)(1); *see Cowart*, 90 F.3d at 157 ("Under [Rule 404(b)(1)], evidence of criminal character or propensity is excluded because the jury might convict the defendant for the conduct proving propensity rather than for the offense for which he is on trial.").

We begin with the testimony linking Smith to a fatal drug overdose. In response to a question from the government regarding how he began investigating Smith, Detective Griffis responded that his department assisted another police department "with a fatal overdose death [investigation]," which ultimately led them to Smith through discovery of the decedent's text messages to Rico Dude Man. The government did not inquire into the details of the overdose or Smith's speculated involvement in it. And no other witness mentioned the overdose. However, Smith now asserts the district court should have sua sponte stricken the mention of this overdose from the record and sua sponte given a "cautionary" instruction to the jury. Smith argues that the district court's failures to do so constitute reversible error. We disagree.

As the government asserts, this testimony was mere background, or *res gestae*, evidence. "Typically, [*res gestae*] evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000)). Proper *res gestae* evidence "has a causal, temporal or spatial connection with the charged offense." *Hardy*, 228 F.3d at 748. These limits ensure that we remain "careful not to allow *res*

---

forfeited. *See, e.g.*, *United States v. Montgomery*, 998 F.3d 693, 698 (6th Cir. 2021); *United States v. Calvetti*, 836 F.3d 654, 664 (6th Cir. 2016).

*gestae* evidence as a 'backdoor to circumvent [the] goals' of Rule 404(b)." *United States v. Sadler*, 24 F.4th 515, 555 (6th Cir. 2022) (quoting *United States v. Gibbs*, 797 F.3d 416, 423 (6th Cir. 2015)). Here, Griffis's testimony regarding the fatal overdose completes the story of the charged offenses by explaining why law enforcement began investigating Smith and how they obtained his phone number. Absent this explanation, the story would have begun with Griffis cold-calling Smith without reason. The district court did not plainly err in allowing this testimony because proper *res gestae* evidence does not implicate Rule 404(b). *See Hardy*, 228 F.3d at 748.

We reach the same conclusion with respect to the testimony and exhibits presented at trial concerning law enforcement's prior knowledge of Smith's drug trafficking and gang-related activities. Once Griffis began investigating Smith, he discovered that other law enforcement agencies were independently investigating Smith for his speculated involvement in a gang and that Smith had an active arrest warrant. Moreover, based on social media posts from Smith and other alleged gang members, it appeared that Smith was likely involved with firearms and drug trafficking. Smith's suspected gang activity was not emphasized at trial. Rather, the government used the alleged gang members' social media posts to link Smith to firearms and drug trafficking. And his connection to unlawful activities helped explain why several law enforcement agencies were interested in Smith and worked together to conduct the buy bust. This *res gestae* evidence completes the narrative of the charged offenses and was properly admitted. *See Gibbs*, 797 F.3d at 424 (explaining that "[t]he purpose of background evidence is to put the charges in the appropriate context" and noting that "defendants are not entitled to a 'sanitized' recounting of the facts") (citation omitted). At the very least, any error in admitting this evidence was not "obvious or clear." *Mayberry*, 540 F.3d at 512.

In any event, no prejudice resulted from the admission of any of this challenged evidence. Smith twice provided drugs to an undercover police officer; Smith's co-defendants, with whom he was arrested, enabled the second distribution; and Smith admitted to possessing the firearm in jail calls. Even if the challenged evidence was improperly admitted in violation of Rule 404(b), Smith has failed to demonstrate a reasonable probability that it affected the outcome of the trial. *United States v. Olano*, 507 U.S. 725, 734 (1993); *Molina-Martinez v. United States*, 578 U.S. 189, 194 (2016).

### III.

Next, Smith argues that the district court committed error requiring reversal by giving his stipulated jury instructions. We disagree. Before trial, Smith and the government jointly stipulated that Smith had previous felonies. Additionally, they submitted joint proposed jury instructions that erroneously detailed the nature of his felony convictions in the felon-in-possession instruction. The district court gave Smith several opportunities to object to the instructions, yet he never did so. Eventually, the district court gave the instructions as provided by the parties.

On appeal, Smith argues that, given the separate prior-felony stipulation, the district court improperly referenced his specific prior felony convictions when reading the felon-in-possession instruction, contrary to *Old Chief v. United States*, 519 U.S. 172, 191–92 (1997). This error, Smith argues, entitles him to vacatur of the felon-in-possession conviction and a new trial on this charge. The government appropriately concedes that, in light of the parties' stipulation, the district court erred in reading the names and nature of Smith's prior felony convictions. However, the government asks us not to review this error as invited, given Smith's approval of the instruction.

Invited error "cover[s] much of the space in the middle" between waiver and forfeiture on a hypothetical continuum. *United States v. Montgomery*, 998 F.3d 693, 698 (6th Cir. 2021).

"A litigant invites error when he contributes in some way to the district court's error without intentionally relinquishing his rights." *Id.*; *see also United States v. Sharpe*, 996 F.2d 125, 129 (6th Cir. 1993). In such a scenario, a litigant is more culpable for the error than he is in forfeiture circumstances, but less culpable for the error than he is in waiver circumstances. *Montgomery*, 998 F.3d at 698. Notably, the invited-error doctrine applies to appeals like Smith's—when a defendant challenges jury instructions to which he stipulated. *See United States v. Barrow*, 118 F.3d 482, 490–94 (6th Cir. 1997).

Although this doctrine typically precludes appellate review when a defendant fails to object to jointly provided and stipulated-to jury instructions, such conduct does not necessarily foreclose our review. *See United States v. Howard*, 947 F.3d 936, 944–45 (6th Cir. 2020). We may review an invited error "when the interests of justice demand" so. *Id.* at 945 (citation omitted). "Whether the interests of justice demand that we review an invited error is left largely to our discretion." *Montgomery*, 998 F.3d at 699. We have exercised that discretion when, for example, the government is equally at fault for the error and the defendant is claiming that his constitutional rights have been violated. *Howard*, 947 F.3d at 945. In such cases, we review an invited error for plain error. *Id.*; *see also Sharpe*, 996 F.2d at 129. In the context of stipulated-to-jury-instructions challenges, this plain-error inquiry "requires a finding that, taken as a whole, the jury instructions were so clearly erroneous as to likely produce a grave miscarriage of justice." *Howard*, 947 F.3d at 945 (citation omitted).

We agree with the government that Smith invited the district court's error of specifically naming his prior felony convictions in the jury instructions. The parties jointly submitted the proposed instructions, made joint revisions, and the district court received the parties' approval several times. Smith's counsel never raised the *Old Chief* error with the felon-in-possession

instruction. Nor, of course, did the government, and it concedes that it is equally at fault for inviting the error. Yet, Smith has not raised this error in a constitutional context, counseling against review.

But whether we decline review or we review for plain error, the end result is the same: Smith is not entitled to relief because he cannot demonstrate either that his substantial rights were affected or that a grave miscarriage of justice resulted from this purported error. *See Sharpe*, 996 F.2d at 129 (finding no plain error in faulty jury instructions); *Barrow*, 118 F.3d at 491–94 (same). The evidence at trial showed that Smith—who is aware he is a felon—was the only person who had access to the firearm recovered in the Jeep, reached toward the area where the firearm was found shortly after the vehicle collision, and admitted in recorded jail calls that the firearm was his. Moreover, the district court gave a limiting instruction to ensure that the jury would not rely on any evidence of other crimes or wrongs for propensity purposes. As such, Smith has not demonstrated that he was prejudiced by the felon-in-possession instruction and is not entitled to relief.

IV.

Finally, Smith asserts the evidence presented at trial is insufficient to sustain his conviction for possession of a firearm in furtherance of a drug trafficking crime. We review a challenge to the sufficiency of the evidence for a criminal conviction de novo. *United States v. Robinson*, 813 F.3d 251, 255 (6th Cir. 2016). A defendant raising a sufficiency-of-the-evidence challenge on appeal faces a "very heavy burden." *Id.* (internal quotation marks omitted). The defendant must show that, even when viewing the evidence in the light most favorable to the prosecution, no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Jackson*, 473 F.3d 660, 669 (6th Cir. 2007) (citation omitted). We may

not "reweigh the evidence, reevaluate the credibility of witnesses, or substitute our judgment for that of the jury." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (internal quotation marks and brackets omitted).

To be convicted of possessing a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(i), the government must prove "not just that a defendant 'possesse[d] a firearm' but also that the defendant did so 'in furtherance of' a 'crime of violence or drug trafficking crime.'" *United States v. Maya*, 966 F.3d 493, 499–500 (6th Cir. 2020) (citing 18 U.S.C. § 924(c)(1)(A)). Smith challenges only the "in furtherance of" element of this offense. He argues that he was not seen with the firearm while providing the drugs, nor was the seized firearm "quickly and easily available for use" during the second distribution.

"[W]hether a defendant possesses a firearm 'in furtherance of' a crime depends on the defendant's intent in possessing the gun," so we must ask "[w]hy did [the defendant] possess a gun?" *Id.* at 500. If a defendant possesses a gun for an "innocent purpose—such as for hunting or as a wall-mounted antique"—then he did not possess it to further a drug trafficking enterprise. *Id.* (quotation marks omitted). On the other hand, if a defendant possesses a gun "to protect the drugs, the proceeds of drug sales, or the dealer himself," then he possesses the firearm in furtherance of drug trafficking. *Id.* (internal quotation marks omitted). Although we have previously consulted the "*Mackey* factors" to determine the purpose for which a defendant possessed a firearm, we have more recently moved toward a "holistic analysis" in answering this question. *Id.* at 501–02 (citing *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001)). That is, "whether a jury could rationally find that the defendant possessed the gun to aid the drug crime." *Id.* at 503.

Viewing the evidence holistically, a jury could rationally find that Smith possessed the firearm in the Jeep for the purpose of aiding his drug trafficking. Several law enforcement officers testified that drug traffickers typically possess firearms to protect themselves, money, or drugs. Protection is especially necessary when drug traffickers flaunt the benefits of their drug trafficking, such as cash and expensive items, on social media—which Smith did. Smith also frequently posted photos and videos of his firearms on social media, which could have been a warning to rivals who considered robbing him of his drug proceeds. Moreover, when Smith and his co-defendants were arrested after the second drug distribution, law enforcement recovered a firearm that only Smith could access. And although the firearm was wedged under the vehicle seat at the time it was recovered, a rational jury could conclude that Smith placed it there when Special Agents Kopchak and Briggs observed him leaning over and reaching under the seat. *See id.* at 500 (allowing the government to rely on circumstantial evidence when proving possession of a firearm in furtherance of a drug trafficking crime because "[i]n most cases, a defendant will not confess to possessing the firearm to facilitate a drug crime"). Further, the record contains no innocent explanation or reasonable inference for Smith's possession of the firearm. For these reasons, a jury could rationally infer that Smith had the gun in his possession to protect the thousands of dollars of cash in the Jeep or to protect himself during his drug distribution.[2]

V.

We affirm the judgment of the district court.

---

[2]We would reach the same conclusion if we had consulted the *Mackey* factors, which overlap with much of the holistic analysis. *See Mackey*, 265 F.3d at 462; *Maya*, 966 F.3d at 501.