NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0227n.06

Nos. 23-6029/6034

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
May 05, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| ALLANTE RAMONE BROWN, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: BOGGS, LARSEN, and DAVIS, Circuit Judges.

LARSEN, Circuit Judge. Allante Brown was found with drugs during a traffic stop. As a result, Brown was indicted on one count of possession of a heroin/fentanyl mixture. Brown pleaded guilty to the charge. Brown's drug possession also violated the terms of his supervised release. In a combined sentencing hearing, the district court revoked Brown's supervised release and sentenced him to twenty-four months in prison. For the criminal conviction, the court sentenced Brown to seventy-five months in prison, consecutive to the revocation sentence. Brown now appeals, claiming that the district court procedurally erred by lengthening his prison term to promote rehabilitation in violation of *Tapia v. United States*, 564 U.S. 319 (2011). But because Brown's counsel invited any *Tapia* error, we AFFIRM.

I.

In 2019, Allante Brown was convicted of possessing a firearm as a felon. The district court sentenced him to eighteen months in prison, to be followed by three years of supervised release. Upon release from prison, Brown almost immediately violated his supervised-release terms. So

the court revoked his supervised release and sentenced him to six months in prison to be followed by thirty months of supervised release.

Shortly after Brown was released from his second prison stint, officers stopped his car. A canine alerted to the presence of drugs in the vehicle. Officers searched the vehicle and found suspected fentanyl and drug paraphernalia. The U.S. Probation Office charged Brown with violating his supervised-release conditions by committing another crime. Meanwhile, a federal grand jury separately indicted Brown on one count of possession with intent to distribute a heroin/fentanyl mixture. Brown pleaded guilty to the indictment. At a joint sentencing hearing, the district court revoked Brown's supervised release and sentenced him to twenty-four months in prison for violating the terms of his release. For his criminal conviction, the court sentenced Brown to seventy-five months in prison, consecutive to the revocation sentence, to be followed by five years of supervised release. Brown now appeals.

II.

*Sentencing.* Brown challenges the procedural reasonableness of his sentence. "Procedural reasonableness requires the court to 'properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence.'" *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018)).

Brown argues that the district court relied on an impermissible factor—the need to promote rehabilitation—when fashioning his sentences. That reliance, he argues, violated the Sentencing Reform Act and *Tapia v. United States*, 564 U.S. 319 (2011).

In *Tapia*, the Court held that the Sentencing Reform Act "precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation." *Id.* at 332. But a court may still "discuss[] the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." *United States v. Deen*, 706 F.3d 760, 768 (6th Cir. 2013). And reversal is not "required whenever it is merely possible that rehabilitation drove the length of imprisonment." *United States v. Krul*, 774 F.3d 371, 375 (6th Cir. 2014). Instead, a *Tapia* error occurs "only where there is an identifiable basis for concluding" that a district court "either imposed or lengthened" the defendant's sentence for rehabilitative purposes. *United States v. Adams*, 873 F.3d 512, 521–22 (6th Cir. 2017) (quoting *Krul*, 774 F.3d at 372). Brown alleges that the district court committed three *Tapia*-based errors: "(1) 'fashion[ing]' Brown's revocation sentence to get Brown 'help,' (2) imposing consecutive sentences for rehabilitative ends, and (3) selecting the sentence for Brown's new conviction to make resources 'available' to him." Appellant Br. at 12 (alteration in original).

Brown acknowledges that he did not object to his sentences or raise his arguments before the district court, so he asks us to review for plain error. *Parrish*, 915 F.3d at 1048. The government, for its part, argues that defense counsel went further and invited any error. Invited error occurs where a party "contributes in some way to the district court's error without intentionally relinquishing a right." *United States v. Carter*, 89 F.4th 565, 568 (6th Cir. 2023) (cleaned up). We review invited errors only in cases of manifest injustice. *Id.*

We agree with the government. At sentencing, defense counsel specifically addressed how she thought the court should handle the two different sentences. She explained that because the supervised release violation stemmed from a previous conviction, Brown was concerned that would affect the availability of programs from the Bureau of Prisons (BOP). Counsel affirmatively

asked the court "to consider a consecutive sentence so that [Brown] can have served out the time on that supervised release violation to assure that he's going into the BOP for his sentence of the substantive offense." R. 91, Sent'g Transcript, PageID 546. She continued, "I think that that is going to open up more programs and more opportunities that will very much benefit Mr. Brown to assure success after his release from this point forward." *Id.* One of the factors counsel asked the court to consider was that Brown's father and brother were in prison facing "stiff sentences" and Brown knew "that this is in fact the very path that he's on if he doesn't take opportunities with the term of imprisonment Your Honor will impose to get skills and education that he needs." *Id.* at 547. Defense counsel then pivoted to Brown's mental-health and drug issues and asked the court for "a sentence that will give him time to address those mental health issues and get the treatment that he needs and put him on a path for continuing that treatment, giving him resources to continue that treatment is imperative." *Id.* at 548. Finally, counsel asked "that a sentence be imposed that allows him enough time to address these issues, to get the vocational and educational training that's needed." *Id.* at 549. Brown's counsel then asked for consecutive sentences but argued that the court should vary downward from the Guidelines range for the supervised-release violation and sentence Brown near the bottom of the Guidelines range for the conviction.

The district court responded accordingly. During a lengthy discussion of the relevant factors for sentencing on the supervised-release violation, the district court said, "[W]hat I really respect from what I've heard from you, is you know [you need help] and you're asking for it . . . so we'll fashion a sentence ultimately that will get you some help, and it will be up to you to take advantage of it." *Id.* at 558. The court found that the issue of consecutive sentences was "very much in the favor of the defendant in this case" and "that consecutive sentences here are appropriate for the reasons requested, and there's agreement on both sides that that would be

appropriate in this particular case." *Id.* at 560.  When walking through the relevant factors for the sentencing on the conviction, the court briefly noted that "we'll see if what you're saying here to me today holds true, whether you can . . . take advantage of the resources that we're going to make available to you." *Id.* at 563.  In the end, the court sentenced Brown to consecutive sentences and recommended to the BOP that Brown participate in various programs for his benefit.

We need not decide whether these alleged errors violate the Sentencing Reform Act and *Tapia* because the defense invited any error.  Defense counsel told the court that Brown needed help lest he end up in the same spot as his father and brother; that Brown was asking for a sentence that would "allow[] him enough time" to address his mental-health and drug issues and to take advantage of the programs offered by the BOP; and that one important way to ensure that opportunity was to impose consecutive sentences.  The trial court's granting of these requests is the very actions that Brown now raises as error on appeal.  Defense counsel's arguments before the district court clearly contributed to the district court's decision to impose consecutive sentences and to its statements at sentencing, which Brown now casts as evidence of *Tapia* error.  *Carter*, 89 F.4th at 568.  That's invited error, which, in most circumstances, precludes appellate review. *Id.*

Brown counters that the failure to review his arguments would result in manifest injustice.  "Whether review of an invited error is needed to prevent manifest injustice is largely left to the discretion of the appellate court." *Id.* at 570.  "We 'typically' review an invited error when 'the government and the defendant are equally at fault and the defendant claims a violation of his constitutional rights.'" *Id.* (quoting *United States v. Montgomery*, 998 F.3d 693, 699 (6th Cir. 2021)).  In the end though, the appellate court has "discretion to review any invited error of

'sufficient gravity,'" *id.* (quoting *Montgomery*, 998 F.3d at 699), although we exercise that discretion "rarely." *Id.* at 568.

Here, the government and Brown are not equally at fault for any error. It is true that the government asked for consecutive sentences, but not on rehabilitation grounds. The government never pressed the rehabilitation issue, while defense counsel did repeatedly. Nor are the alleged errors here of the constitutional variety.

Brown nonetheless argues that the gravity of the invited error should cause us to review it. He cites our decision in *Montgomery* for the proposition that an error is of "sufficient gravity" if it will force the defendant to "linger longer in prison." 998 F.3d at 699–700. But it cannot be the rule that any error arguably affecting a defendant's sentence amounts to "manifest injustice." If that were the rule, the doctrine of invited error could play no role in sentencing cases. And, indeed, that is not what *Montgomery* held. Critical to the analysis there was that the government was equally complicit in the error. That made *Montgomery* different from cases in which "the district court made the error directly in response to [the defendant's] urging that it take that very course." *Id.* at 699 (citation omitted). That is exactly what occurred here—the district court made any alleged errors directly in response to the urging of Brown's counsel—so *Montgomery* doesn't weigh in favor of reviewing the invited errors here.

Because Brown's counsel invited any alleged errors, we decline to review his argument that the district court fashioned a procedurally unreasonable sentence.

*Ineffective Assistance of Counsel.* Brown also argues that his trial counsel performed deficiently at sentencing by not objecting to his sentences. Generally, however, we will not entertain "ineffective assistance of counsel claims on direct appeal, since there has not been an opportunity to develop and include in the record evidence bearing on the merits of the allegations."

*United States v. Ledbetter*, 929 F.3d 338, 364 (6th Cir. 2019) (citation omitted). Even where "the record contains some indication of deficiencies in counsel's performance," it may not reveal whether trial counsel's strategy was nonetheless reasonable. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Accordingly, ineffective assistance claims are generally best left for a motion pursuant to 28 U.S.C. § 2255. *Id.*

Indeed, it can be "risky" to raise such a claim on direct appeal. *United States v. Wallace*, 753 F.3d 671, 676 (7th Cir. 2014). Although this court has yet to rule on the question, at least three of our sister circuits have held that a defendant who raises an ineffective-assistance claim on direct appeal is precluded from raising ineffective assistance in a later § 2255 motion. *See Yick Man Mui v. United States*, 614 F.3d 50, 56 (2d Cir. 2010); *Peoples v. United States*, 403 F.3d 844, 847 (7th Cir. 2005); *United States v. Galloway*, 56 F.3d 1239, 1242 (10th Cir. 1995) (en banc); *see also United States v. Glover*, 760 F. App'x 4, 6 n.1 (D.C. Cir. 2019) (noting the open question in that circuit). And in one circuit, that rule obtains even when the § 2255 motion is based on a different failing of counsel. *Peoples*, 403 F.3d at 849. The general practice of our circuit has been to decline to rule on ineffective-assistance-of-counsel claims brought on direct appeal. *See, e.g.*, *Ledbetter*, 929 F.3d at 364; *United States v. Erker*, 129 F.4th 966, 980 (6th Cir. 2025); *United States v. Jackson*, 995 F.3d 476, 484 (6th Cir. 2021). We see no reason to depart from our general practice here.

\* \* \*

We AFFIRM.